**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                  No. 95-5406

JAMES CLEO WHITE, JR.,
Defendant-Appellant.

Appeal from the United States District Court
for the District of South Carolina, at Columbia.
Dennis W. Shedd, District Judge.
(CR-94-422)

Submitted: April 15, 1996

Decided: April 29, 1996

Before ERVIN and MOTZ, Circuit Judges, and CHAPMAN,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

John D. (Jay) Elliott, Columbia, South Carolina, for Appellant.
J. Preston Strom, Jr., United States Attorney, Marvin J. Caughman,
Assistant United States Attorney, Columbia, South Carolina, for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

James Cleo White, Jr., pled guilty to conspiracy to possess marijuana with intent to distribute, 21 U.S.C.A. § 846 (West Supp. 1995), and to aiding and abetting the distribution of marijuana, 21 U.S.C.A. § 841 (West 1981 & Supp. 1995), 18 U.S.C.§ 2 (1988). He appeals his 57-month sentence on the grounds that the district court clearly erred in determining the amount of marijuana attributable to him, USSG § 2D1.1,[1] and in finding that he had a supervisory role in the offense. USSG § 3B1.1(b). We affirm.

White was contacted in June 1994 by Jerry Spires, a marijuana dealer who was cooperating with authorities. White had dealt with Spires before. On this occasion, White took Spires to meet his nephew, Ronnie Malpass. Spires told Malpass he wanted to buy 200 pounds of marijuana. Malpass told Spires he had access to 300 pounds of marijuana in Charleston, South Carolina, and 500 pounds "up the road." White later explained to Spires that "up the road" meant in Tennessee. White telephoned Spires later that day and told him that Malpass had gone to check on the marijuana.

A few days passed, during which Malpass made telephone calls to the Charleston area and to Tennessee. White was in contact with Spires and agreed that the marijuana would be delivered to Spires's house. However, on June 15, Malpass called Spires and said he "couldn't get but one of them." A disagreement arose over where the delivery would be made. An unidentified person who had brought the marijuana to a home[2] near Chappells, South Carolina, and wanted

_____

[1] United States Sentencing Commission, Guidelines Manual (Nov. 1994).

[2] The home of codefendant Donald Cook, who had previously allowed his house to be used as a stash house.

2

Spires to come there. Spires, who had law enforcement officers waiting at his house for the delivery, said he was unwilling to go to an unfamiliar place to meet unfamiliar people.

At this point, White drove to Spires's house and told him that if Spires would take delivery in Chappells, the source would later be willing to deliver 100 pounds a week to his house. When Spires and White arrived at the home where Malpass was waiting, White directed Malpass to take Spires to the vehicle containing the marijuana, which was parked 200 yards away. Malpass then had to go back and get the key to the trunk from White. After the delivery, White and the others were arrested.

White objected to the probation officer's recommendation that 200 pounds of marijuana should be attributed to him for sentencing purposes, arguing that he was not personally capable of producing 200 pounds. At sentencing, White agreed that Spires had negotiated to buy 200 pounds but said that he had not been sure whether Malpass could produce 200 pounds.

Drug amounts under negotiation are used to compute a defendant's sentence unless the court finds that the defendant did not intend or was not reasonably capable of producing the negotiated amount. USSG § 2D1.1, comment. (n.12). In a drug conspiracy, moreover, a defendant is responsible for all reasonably foreseeable acts of others in furtherance of the conspiracy. USSG § 1B1.3(a)(1)(B). The district court found that the most reasonable inference from the evidence before it was that the 100 pounds delivered to Spires was a first installment and that the rest of the 200 pounds could have been produced eventually.

The district court's determination of the drug amount attributable to a defendant is a factual question reviewed for clear error. United States v. Fletcher, 74 F.3d 49, 55 (4th Cir. 1996). We cannot say that the district court was clearly in error. White admitted an agreement for 200 pounds at sentencing. Even though only 100 pounds were produced on the day he was arrested, Spires's recorded conversations with White and Malpass do not support an inference that no more could be produced.

3

White next contends that he was not a supervisor, but merely a go-between. He testified at sentencing that he gave no directions to anyone; however, he admitted that he played an active role in bringing about the sale. The district court rejected the probation officer's recommendation that White receive a four-level leader/organizer adjustment, but found that he was a supervisor because he got on the telephone to resolve the conflict between Malpass and Spires over the delivery site and ultimately convinced Spires to come to Chappells. A manager or supervisor adjustment is appropriate when the defendant manages or supervises at least one other participant. USSG § 3B1.1, comment. (n.2). One of the factors to be considered is whether the defendant exercises some degree of control and authority over the others. USSG § 3B1.1, comment. (n.4). Although there was no evidence before the district court to establish that White gave orders to Malpass or the other conspirators, there was no doubt that he was a person of authority in the conspiracy, and that the marijuana transaction would not have occurred without his orchestration. On these facts, we find that the district court did not clearly err in finding that White's was a supervisory role.

The sentence imposed by the district court is therefore affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4